United States District Court
Southern District of Texas
**ENTERED**
December 14, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KEVIN MATTHEW ESSER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00045 |
| | § | |
| ANDREW SAUL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Kevin Esser brought this action on March 17, 2021 seeking review of the Commissioner's final decision determining he was not disabled. (Case No. 2:21-mc-9, D.E. 1). On September 6, 2021, Plaintiff filed a Brief, construed as a Motion for Summary Judgment. (D.E. 12). On November 12, 2021, Defendant filed a Cross Motion for Summary Judgment to which Plaintiff replied. (D.E. 15 and D.E. 17). For the reasons below, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

## I.     JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The burden has been described as more than a scintilla but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted).  A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present.  However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment

meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted).  The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's RFC, claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## III.    PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on April 28, 2019 at age 35, alleging disability as of May 2, 2018,[1] due to traumatic brain injury, posttraumatic stress disorder ("PTSD"), memory loss, depression, disc herniation at C4-C7, spinal stenosis, diplopia (double vision), acquired ankylosing spondylitis, migraines, tension headaches, degenerative arthritis and intervertebral disc syndrome of the lumbar and thoracic spine. (D.E. 8-7, Pages 43-49 and D.E. 8-8, Page 31).  He has a GED and past work experience as an assistant sales manager, retail manager, print shop helper, psychiatric aide and administrative clerk.  (D.E. 8-3, Page 25; D.E. 8-4, Page 32; D.E. 8-8, Page 32; D.E. 8-9, Pages 3-16).  Plaintiff reported his ailments began as the result of a June 9, 2013 car accident which occurred when he was returning from training in the Army National Guard and gradually became worse, eventually preventing him from working as of May 2, 2018. (D.E. 8-4, Page 8 and D.E. 8-9, Pages 4, 18, 29, 32-33 and 53-55).  He was medically

---

[1]Plaintiff later amended his alleged onset date to June 4, 2017.  He was medically discharged from the military on May 2, 2018 but was terminated from his civilian employment on June 4, 2017.  (D.E. 8-8, Page 42).

retired from the military and received a 100% disability rating from the Veterans Administration.  (D.E. 8-4, Page 29; D.E. 8-7, Pages 2, 8, 21 and 23 and D.E. 8-9, Page 27).  After Plaintiff's applications were denied initially and upon reconsideration, at Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on August 12, 2020, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  (D.E. 8-4; D.E. 8-5, Pages 2-33; D.E. 8-6, Pages 2-6 and 11-17). The ALJ issued an unfavorable decision on October 9, 2020, finding Plaintiff not disabled from June 4, 2017, the alleged amended onset date, through the date of the decision.  (D.E. 8-3, Pages 2-27).

The Appeals Council declined Plaintiff's request for review on January 20, 2021, making the ALJ's October 9, 2020 decision final.  (D.E. 8-3, Pages 2-7).  Plaintiff then filed this action on March 17, 2021, seeking review of the Commissioner's final decision. (Case No. 2:21-mc-9, D.E. 1).

## IV.   ISSUES PRESENTED

Plaintiff alleges the ALJ did not properly consider all of Plaintiff's functional limitations resulting from his severe impairments when determining his residual functional capacity ("RFC").   Specifically, Plaintiff asserts the ALJ failed to incorporate limitations related to his reported headaches.  Plaintiff further asserts the ALJ's determination, related to his post-traumatic stress disorder ("PSTD), that he was mildly limited in interacting with others is not supported by the record as state agency medical consultants opined Plaintiff

was moderately limited and the ALJ did not recognize or provide reasons for not relying on these opinions.

## V.   THE ALJ'S DECISION AND HEARING TESTIMONY

The ALJ determined Plaintiff had not engaged in substantial gainful activity since June 4, 2017.  (D.E. 8-3, Page 18).  The ALJ further determined Plaintiff had the following severe impairments:  cervical and lumbar degenerative disc disease; osteoarthritis of the knees; obesity; headaches; traumatic brain injury; and PTSD.  (D.E. 8-3, Page 18).  The ALJ also determined Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment.  (D.E. 8-3, Pages 19-20).  In relevant part, the ALJ noted:

> The claimant's headaches do not equal section 11.02.  The record does not document the claimant's headaches at a frequency or a severity to equal section 11.02.  He testified he has them only three times a month on medications but did not characterize them as to quality/severity/duration or response to abortive treatment or other measures.  The record does not document these as an active, emergent concern during the period of alleged disability.
>
> …
>
> The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.15 [Trauma and stressor related disorders].  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairment must result in one extreme limitation or two marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a moderate limitation.  The claimant reports impaired recall attendant to PTSD

and TBI with recent records showing these conditions have responded to medical management. Serial mental examinations document that he now has intact, normal memory with the claimant reporting good functional recall, such as his ability to recount what he and his daughter discussed during FaceTime calls. He helps out his friends at their restaurants.[2]

In interacting with others, the claimant has a mild limitation. Depressed/melancholic mood and corresponding affect are noted on examination at times and the claimant reports PTSD with an element of anxiety and irritability. However, his symptoms have responded to treatment following modification of his medication regimen with serial examinations typically detailing euthymic mood and congruent affect. More recent records show he reportedly helps out at restaurants and keeps in contact with his family.[3]

---

[2] The ALJ cited to treatment notes from April, May and November 2019 where Plaintiff is noted as having been dressed and groomed appropriately, being polite and cooperative, appropriately alert, with normal speech, displaying insight and motivation for treatment, having logical and goal directed thought processes, no unusual motor activity and being oriented to person, place, time and situation. (D.E. 9-3, Pages 17 and 34; D.E. 9-8, Pages 4-5 and 24-25). The ALJ also cited to treatment notes from November 2019 where Plaintiff reported he had been helping a friend with his restaurant and video chatting with his daughter. (D.E. 9-8, Pages 24-25). The ALJ further cited to treatment notes from March and May 2018, where Plaintiff is noted as appropriately groomed and ambulatory, oriented to person, place and time, with normal speech rate and volume and articulate speech, goal oriented thought content, normal remote and recent memory and intact insight and judgment. (D.E. 9-12, Pages 6 and 15).

[3] The ALJ cited treatment notes from March 2017 where Plaintiff is noted as having decreased sleep, low energy, irritability, restlessness, depression, anxiety and "[c]oncentration affected by chronic pain." (D.E. 9-1, Pages 3-7). Plaintiff also reported issues with memory although he is noted as having his remote and recent memory within normal limits. (D.E. 9-1, Pages 4-7). Treatment notes cited from November and December 2018 noted Plaintiff was having difficulty with his marriage and may divorce and it was also noted that Plaintiff was polite and cooperative with the therapist, oriented and appropriately alert, with normal speech, logical thought process, euthymic mood, intact cognition, good insight and judgment and average intellect. (D.E. 9-4, Pages 23-24, 32 and 50). It is further noted that Plaintiff's ailments were "fairly well controlled on current medications," his "[p]sychiatric condition is relatively stable at this time," and Plaintiff reported "good efficacy with this combination of medications for mood and sleep." (D.E. 9-4, Page 50).

The ALJ also cited subsequent treatment notes from February and March 2019 where Plaintiff's ailments are noted as "fairly well controlled on current medications" and he is noted as appropriately groomed and dressed, with a euthymic mood and congruent affect, normal speech, intact cognition, average intellect, good insight and judgment and clear thought processes. (D.E. 9-3, Pages 69 and 86). Plaintiff reported "good efficacy with both medications for anger control and mood stabilization." (D.E. 9-3, Page 69). Plaintiff also reported his medications were "effective for migraine prevention as well" and he had "good efficacy from both medications for depression and anxiety." (D.E. 9-3, Page 69). Treatment notes cited from October 2019 noted Plaintiff reported getting upset with people easily and hypervigilance. (D.E. 9-8, Page 13). He further reported that "he was eating better since his family has left" including sushi, steak and lobster with limited pasta/bread/rice and more vegetables. (D.E. 9-8, Page 13). He further reported his energy and concentration were good and he has "been helping his friend with his tamale business" and "enjoys spending time with his friend." (D.E. 9-8, Page 13). Plaintiff also reported "he feels like his medications are working well." (D.E. 9-8, Page 13).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. Some deficits in concentration and persistence are reported in connection with the claimant's PTSD and TBI but his symptoms have receded in response to treatment with more recent records showing he remains functionally independent, including driving, that he enjoys movies and videogames to pass the time and that he FaceTimes with family. Deficits of concentration and attention are not sustained on serial examination.[4]

As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant's appearance, grooming and dress are good and not a concern on serial examination. The claimant has good insight and judgment although more recent records show he has been cautioned against substance abuse while responding to mental health treatment.[5]

(D.E. 8-3, Pages 19-20).

The ALJ then determined Plaintiff's mental impairment did not cause at least two marked limitations and accordingly, the paragraph B criteria were not satisfied. (D.E. 8-3, Page 20). The ALJ concluded Plaintiff had the RFC to perform a limited range of sedentary work. (D.E. 8-3, Pages 20-21). More specifically, the ALJ determined Plaintiff could occasionally stoop, crouch, balance and climb stairs but could not kneel or crawl. (D.E. 8-3, Pages 20-21). The ALJ further determined Plaintiff was limited to simple tasks and "has mild to moderate chronic pain of sufficient severity to be noticeable to him at all times but he remains able to be attentive and responsive in a work setting and could carry out normal work assignments satisfactorily." (D.E. 8-3, Page 21). In reaching this

---

[4]The ALJ cited to the same treatment notes discussed previously which indicated Plaintiff's ailments were controlled with medication, now lives alone, drives, shops, smokes marijuana against medical advice, enjoys watching movies and playing video games and video chatting with his daughter. (D.E. 9-1, Pages 4-7; D.E. 9-3, Pages 17, 34, 69 and 86; D.E. 9-4, Pages 23, 32, and 50; D.E. 9-8, Pages 4-5, 12, 25 and 37-38; D.E. 9-10, Page 34; and D.E. 9-12, Pages 6 and 15).

[5]The ALJ again cited to previously discussed treatment notes which indicated Plaintiff was appropriately groomed with good insight and judgment, was polite and cooperative and appropriately alert with normal speech. (D.E. 9-3, Pages 17 and 34; D.E. 9-8, Pages 4-5; and D.E. 9-12, Pages 6 and 15).

determination, the ALJ noted Plaintiff reported that without medication, he has headaches three to four times a week but with medication, they are reduced to three times a month. (D.E. 8-3, Page 21).  The ALJ further noted Plaintiff reported the use of sunglasses, a cane and an alpha stimulator all helped his symptoms and improved his concentration and focus. (D.E. 8-3, Page 21).  Additionally, the ALJ also noted that while Plaintiff alleges disability from injuries sustained in the 2013 car accident, he resumed working after his accident and continued in the National Guard until June 2017 "without the objective or other evidence documenting his reports of a decline in his health or functioning preceding that date." (D.E. 8-3, Page 22).  The ALJ further noted:

> The claimant also has PTSD linked to the same motor vehicle accident (Ex. 2D5).  March 23, 2017 primary care mental health records show the claimant reported symptoms but that his mental status examination findings were normal apart from a melancholic mood.  He was appropriately groomed and ambulatory without mention of a cane or other aide.  He was oriented to person, place, time and situation.  Speech rate and volume were normal, appropriate, organized, reality based.  Thought processes and content were normal and appropriate, logical, coherent, and comprehensible.  His insight and judgment appeared to be intact.  The claimant's remote and recent memory appeared normal.  No delusions/hallucinations were present.  The claimant's mood was melancholy with congruent affect.  He denied suicidal or homicidal ideation.  He reported feeling helpless due to physical ailments.  He reported medication was not helpful but watching movies and playing video games were helpful.  He said his pain was 7/10 severity.  The claimant was continued on duloxetine (for treatment of depression and anxiety) and sertraline (treatment of PTSD, depression and anxiety).

(D.E. 8-3, Page 23).

The ALJ also noted there were no "[s]ustained, significant abnormal findings" related to Plaintiff's mental health as there was no evidence of inpatient or emergent treatment for mental health symptoms, "indicating the claimant's symptoms were attenuated with

medication and therapy." (D.E. 8-3, Page 23). Further, the ALJ examined treatment and therapy records from 2017 to November 2019 where Plaintiff's mood was noted as stable, his affect appropriate, his thought processes and content were normal, his insight and judgment were good, he was appropriately alert, he was polite and cooperative, he was groomed appropriately, he had normal speech with logical and goal-directed thought processes, he had normal memory and his treating providers described his mental health ailments as "fairly well controlled" on his current medications. (D.E. 8-3, Pages 23-24; D.E. 9-3, Pages 17, 34 69, 86; D.E. 9-4, Pages 23, 32, 50; D.E. 9-8, Pages 4-5; and D.E. 9-12, Pages 6 and 15). The ALJ also noted that Plaintiff repeatedly reported he used marijuana once a week, was helping his friend with his tamale business, was eating better consuming sushi, steak and lobster, was walking 10,000 steps a day, was helping a friend with his restaurant business and video chatted with his daughter. (D.E. 8-3, Pages 23-24; D.E. 9-8, Pages 12-13, 16-17, 24 and 37-38). The ALJ determined "[t]he reported severity/frequency/limiting effects of his PTSD/TBI symptoms are at odds with his continued functional independence as well as his reported ability to help his friends with their restaurant business and keep up with his daughter by face-timing." (D.E. 8-3, Page 24). The ALJ determined Plaintiff was not capable of performing his past relevant work but, based on the VE's testimony, Plaintiff could perform work as a document preparer, escort vehicle driver and final assembler and was therefore, not disabled. (D.E. 8-3, Page 26).

At the August 12, 2020 hearing, Plaintiff testified he gets severe migraines which cause nausea and light sensitivity but that with medication, he has two to three per month and three to four per week without medication. (D.E. 8-4, Pages 11-12). Plaintiff testified he takes headache medication every night. (D.E. 8-3, Page 12). He further testified his PTSD affects him because he does not like riding in a vehicle and has to be the driver, not the passenger. (D.E. 8-4, Page 16). Plaintiff also stated he was more on "edge a little bit." (D.E. 8-4, Page 17). Plaintiff testified he spends his days helping his wife out around the house, caring for his children, grocery shopping, running errands and helping out his friends. (D.E. 8-4, Page 18). The VE testified that an individual who was limited to sedentary work; could only occasionally stoop, crouch, balance and climb stairs; could not kneel, crawl or climb ladders; had mild to moderate chronic pain of sufficient severity to be noticeable but would allow for attentiveness and responsiveness in a work setting and who was limited to simple tasks could not perform Plaintiff's past relevant work but could perform the work of document preparer, escort vehicle driver and final assembler. (D.E. 8-4, Page 33).

## VI.   DISCUSSION

Plaintiff first asserts the ALJ erred because the ALJ's "RFC determination contains no limitations which may reasonably be attributed to migraine headaches." (D.E. 12, Page 5). However, while the ALJ determined Plaintiff's headaches were a severe impairment at Step Two, an individual claiming disability has the burden of proving disability and must prove the inability to engage in any substantial gainful activity. *Hames v. Heckler*, 707

F.2d 162, 165 (5th Cir. 1983) (citation omitted).  "The mere presence of some impairment is not disabling per se.  Plaintiff must show that she was so functionally impaired by her [disability] that she was precluded from engaging in any substantial gainful activity."  *Id.* (citations omitted); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (An "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.")

An RFC is an assessment, based on all relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite impairments.  20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) ("RFC involves both exertional and non-exertional factors.")  RFC refers to the most a claimant is able to do despite physical and mental limitations.  20 C.F.R. § 404.1545(a).  The ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991) ("Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment" and considerable deference is given to an ALJ's determination of that pain's disabling nature) (citations omitted).  However, the ALJ is not required to incorporate limitations in the RFC that are not supported in the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence…" (citation omitted).  "A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe

disability.  Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. August 19, 2005) (It was not inconsistent for the ALJ to find Plaintiff had a severe mental impairment and also find Plaintiff could perform past relevant work).

Multiple courts in the Fifth Circuit have held there must be an explanation in the ALJ's decision as to why an ALJ, having identified an impairment as severe at Step Two, did not incorporate specific limitations in the RFC based on that severe impairment.  (D.E. 12, Pages 6-7).  However, keeping in mind the differences between a Step Two severity finding and the RFC assessment, an ALJ "does not err solely because [he or] she finds an impairment 'severe' at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." *Sarah B. v. Berryhill*, No. 1:17-cv-0080-BL, 2018 WL 3763837, at *9 (N.D. Tex. June 29, 2018), *rec. adopted*, No. 1:17-cv-080-C-BL, 2018 WL 3756944 (N.D. Tex. Aug. 8, 2018) ("Because the ALJ in this case expressly considered Claimant's severe migraine impairment when assessing her RFC, he did not err when he failed to attribute a specific limitation to that severe impairment [as] [t]he decision of the ALJ provides a sufficient explanation showing that he considered the severe impairment in making the RFC assessment notwithstanding the failure to specify a limitation directly attributable to her migraine headaches.") (citations omitted); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (At Step Two, an "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age,

education or work experience.").  Finding impairments severe at Step Two "does not mandate additional limitations in the RFC."  *Winston v. Berryhill*, No. 3:16-cv-419-BH, 2017 WL 1196861, at *12-14 (N.D. Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2018) (citation omitted).  "The ALJ must clearly consider the severe impairments in determining the claimant's RFC, not necessarily assess limitations for each severe impairment." *Id*. at *13. (citations omitted).

Here, in making the RFC determination, the ALJ specifically discussed Plaintiff's testimony that his medications limited his headaches to three times a month.  (D.E. 8-3, Page 21); *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (Impairments remedied or controlled by medication or therapy are not disabling); *Garcia v. Astrue*, 293 F. App'x 243, 245 (5th Cir. 2008) (Claimant was not disabled where the record showed medication controlled claimant's migraine headaches even though the ALJ determined claimant's headaches were a severe impairment).

Based on the objective evidence, the ALJ further determined Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence.  (D.E. 8-3, Page 21); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference); *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (Subjective complaints must be corroborated, at least in part, by objective medical findings) (citations omitted).  The ALJ further noted that while Plaintiff alleged disability from the 2013 car accident, he continued working for several years after

the accident and the record was "without the objective or other evidence documenting his reports of a decline in his health or functioning preceding" his alleged onset date of June 4, 2017.  (D.E. 8-3, Page 22).  Additionally, the ALJ evaluated Plaintiff's headaches under the criteria of listing 11.02 and determined the medical evidence did not support a listing-level severity.  (D.E. 8-3, Page 19).  Further, no medical evidence in this case indicates Plaintiff's headaches limited his ability to perform all gainful employment and the chronic pain, simple tasks and sedentary limitations included in the RFC can be reasonably attributed to headaches and related symptoms in addition to Plaintiff's other physical and mental impairments.  *Sarah B.*, 2018 WL 3763837, at *9-10 (There is no reversible error when the medical evidence does not support any additional limitations due to Claimant's severe migraine impairment) (citations omitted).  As noted by the ALJ, Plaintiff lives independently, spends time with friends and family members, walks over 10,000 steps per day, helps out at friends' restaurants, shops and runs errands, watches movies and plays video games, drives and helps care for his children.  (D.E. 8-3, Pages 21-24).  Therefore, the undersigned finds the ALJ sufficiently showed Plaintiff's headaches were considered when making the RFC determination regardless of whether a limitation was specifically attributed to them.   *Winston*, 2017 WL 1196861, at *12-14 (ALJ did not err in finding severe impairments at Step Two and not attributing any limitations to those impairments in the RFC assessment as the ALJ considered the impact of the severe impairments prior to making a disability finding, providing "a sufficient explanation showing that she considered the impairments in making the RFC assessment.")  The ALJ considered the

evidence in the record related to Plaintiff's headaches, both the objective medical evidence and Plaintiff's testimony, and provided sufficient analysis as to why this severe impairment did not warrant a specific corresponding limitation in the RFC assessment. *Id.* The "ALJ considered the medical impairments at step two when [making] the RFC determination and assessed Plaintiff's limitations based on their impact on her actual ability to do work [and there is] no inconsistency between the ALJ's step two findings and her RFC determination." *Id.* at *14. Therefore, the undersigned recommends Plaintiff's first argument is without merit.

Plaintiff next asserts the ALJ's finding at Step Two that he has only a mild limitation in interacting with others related to his PTSD is inconsistent with the medical opinions in the record, specifically the two state agency medical consultants who both determined Plaintiff had a moderate limitation interacting with others. (D.E. 8-5, Pages 8 and 25[6] and D.E. 12, Page 7). Plaintiff asserts the ALJ did not properly evaluate these opinions and failed to incorporate any limitations in the RFC attributable to PTSD and social functioning. (D.E. 12, Page 8-9). However, not cited by Plaintiff, is that both state agency medical consultants also opined Plaintiff could understand, remember, and carry out short and simple instructions; could perform activities within a schedule; maintain regular

---

[6]On August 28, 2019, Dr. Mischa Scales, Ph.D., opined, after reviewing the record, that Plaintiff had a mild deficiency in his ability to understand, remember or apply information and to adapt or manage oneself and a moderate deficiency in his ability to interact with others and to concentrate, persist and maintain pace. (D.E. 8-5, Page 8). On December 21, 2019, Dr. Margaret Meyer, M.D., opined, after reviewing the record, that Plaintiff had a mild deficiency in his ability to understand, remember, or apply information and a moderate deficiency in his ability to adaptor manage oneself, to concentrate, persist, or maintain pace and to interact with others. (D.E. 8-5, Page 25).

attendance and be punctual within customary tolerances; could work in coordination with or in proximity to others without being distracted by them; could make simple work-related decisions; could accept instructions and respond appropriately to criticism from supervisors and could maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; could respond appropriately to changes in a work setting. (D.E. 8-5, Pages 12-13 and 30-31). Further, they both also determined Plaintiff had the mental RFC to "understand, remember and carry out simple instructions, make decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work settings." (D.E. 8-5, Pages 14 and 31). Therefore, the ALJ's determination does not conflict with their opinions. Further, in making an RFC determination, the ALJ referenced these opinions finding:

> The State agency consultants assessed the claimant with a residual functional capacity for a range of light exertion and simple instructions. These opinions are partially persuasive as the overall record indicates the claimant is restricted to simple tasks as previously assessed but that he is overall more reasonably restricted to a range of sedentary exertion considering the combined effects of his impairments, including obesity, in light of the evidence of record received to date.

(D.E. 8-3, Page 24).

The ALJ also noted "[t]reatment, medications and therapy have been maintained and adjusted as needed for PTSD and a history of TBI [with] claimant's clinicians characterize[ing] him as "fairly well controlled on current medications." (D.E. 8-3, Page 23). Discussing Plaintiff's treatment records, the ALJ further noted Plaintiff's mental

status examination findings "were normal apart from a melancholic mood" and he was oriented, groomed appropriately, had normal speech, intact insight and judgment, normal and logical thought processes and content, normal memory, affect congruent to mood, and was polite and cooperative with the therapist.  (D.E. 8-3, Pages 23 and 24).  The ALJ further noted "[t]he reported severity/frequency/limiting effects of his PTSD/TBI symptoms are at odds with his continued functional independence as well as his reported ability to help his friends with their restaurant businesses and keep up with his daughter by face-timing." (D.E. 8-3, Page 24).  The ALJ also noted there was no evidence of inpatient or emergent treatment for mental health symptoms, which further demonstrated Plaintiff's "symptoms are attenuated with medication and therapy."  (D.E. 8-3, Page 23).  Additionally, the treatment notes cited by the ALJ in making the Step Two mild limitation finding show Plaintiff's mental ailments, including his PTSD, were "stable" and "well controlled on current medications," with Plaintiff reporting "his medications are working well."  (D.E. 9-3, Pages 69 and 86; D.E. 9-4, Page 50 and D.E. 9-8, Page 13).  Further, while Plaintiff asserts the ALJ substituted his lay opinion for that of medical experts, the determination of residual functional capacity is solely the ALJ's responsibility.  *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (citation omitted).  "What [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work."  *Id*. at 203.  Therefore, the undersigned recommends Plaintiff's second argument also fails.[7]

---

[7]Plaintiff also asserts that without incorporating limitations based on Plaintiff's headaches and PTSD, the hypothetical posed to the VE was deficient.  (D.E. 12, Pages 9-10).  For the reasons discussed above, the undersigned recommends

Again, it is the task of the ALJ to weigh the evidence. *Hames*, 707 F.2d at 165; *Chambliss*, 269 F.3d at 523. "It is not the place of this Court to reweigh the evidence, or try the issue de novo, or substitute its judgment…[i]f supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed." *Id*. Upon review, the ALJ's determination is based on substantial evidence. The ALJ acted within his discretion in interpreting the evidence before him. Even though the record illustrates Plaintiff suffers from several severe impairments, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not prevent him from performing sedentary work as identified in the RFC during the period at issue. Ultimately, the ALJ sufficiently explained why certain opinions were unpersuasive and properly considered Plaintiff's mental ailments.

## VII.   CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED** (D.E. 12), the Commissioner's Motion for Summary Judgment be **GRANTED** (D.E. 15 and D.E. 16) and this case be **DISMISSED**.

Respectfully submitted on December 14, 2021.

Jason B. Libby
United States Magistrate Judge

---

this argument is without merit as the ALJ appropriately considered Plaintiff's ailments prior to making an RFC determination.

18 / 19

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).